UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

REBECCA HENSEN,

                Petitioner,

     v.

MICHAEL J. ASTRUE,
Commissioner of Social Security
Administration,

               Respondent.

Case No. 2:10-cv-00357-CWD

**MEMORANDUM DECISION AND
ORDER**

## INTRODUCTION

Rebecca Hensen ("Petitioner") seeks review of the Commissioner of the Social

Security Administration's final decision denying Petitioner's application for social

security disability insurance benefits and supplemental security income under Titles II

and XVI of the Social Security Act. (Dkt. 1.)  The Court has reviewed the Petition for

Review and the Answer, the parties' memoranda, and the administrative record ("AR").

For the reasons that follow, the Court will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on January 25, 2007, claiming that she had been disabled and unable to work since November 1, 2003, due to fibromyalgia, arthritis, attention deficit hyperactivity disorder, panic and anxiety attacks, migraines, sleep apnea, and carpal tunnel syndrome. (AR 121.) Her application was denied initially and on reconsideration, and a hearing was held on March 7, 2009, before Administrative Law Judge ("ALJ") R. S. Chester.  The ALJ issued a decision finding Petitioner not disabled on April 16,  2009, and Petitioner timely requested review by the Appeals Council.  The Appeals Council denied Petitioner's request for review on June 17, 2010, and the ALJ's decision became the final decision of the Commissioner. Petitioner timely filed an appeal of the Commissioner's final decision to this Court on July 14, 2010. (Dkt. 1.)  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 40 years of age with a high school education. Petitioner's past relevant work experience includes jobs as a waitress, hostess, quality control technician, and companion.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset

date. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner had medical impairments that caused more than a minimal effect on her ability to perform basic work activities, and found the following severe impairments: fibromyalgia, affective disorder, anxiety, personality disorder, and substance addiction disorder. (AR 15.)

Step three asks whether a claimant's impairments meet or equal a listed impairment under the implementing regulations.  A finding that one or more of a claimant's impairments meets or equals a listing presumptively demonstrates disability. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); *see also*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1221-22 (9th Cir. 2010).  At step three, the ALJ conducted a two-part analysis. First, the ALJ found Petitioner's metal impairments sufficiently severe as to render her presumptively disabled. Specifically, the ALJ found "claimant's mental impairments, including the substance use disorders, meet listings 12.04 *Affective Disorder*, 12.06 *Anxiety-Related Disorder*, 12.08 *Personality Disorder*, and 12.09 *Substance Addiction Disorders*." (AR 15-17.) The ALJ concluded, however, that substance abuse was a material contributing factor to Petitioner's disability.  The ALJ then conducted a second analysis, asking whether, in the absence of substance abuse, Petitioner would have any remaining severe impairments.  The ALJ found that, "[w]ithout substance abuse, the claimant continues to have severe signs and symptoms of fibromyalgia." (AR 17.) Petitioner's symptoms related to fibromyalgia were found not to meet or equal a listed impairment.

**MEMORANDUM DECISION AND ORDER - 3**

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. Concerning Petitioner's RFC, the ALJ found that, in the absence of substance abuse, the Petitioner could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).

At step four, relying on the testimony of vocational expert Deborah Lapoint, the ALJ found Petitioner was able to perform her past relevant work as a waitress, hostess, quality control technician, and companion. (AR 23.) In making this finding, the ALJ stated that "[t]his work does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if she stopped the substance use." (*Id*.) Because the ALJ found Petitioner could perform past relevant work at step four, he was not required to make a finding at step five. 20 C.F.R. 404.1520(a)(4) and 416.920(a)(4).

Having found that substance abuse was a material contributing factor to Petitioner's disabling mental impairments, and that Petitioner could perform past relevant work in the absence of substance abuse, the ALJ concluded that "the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision." (AR 24.)

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

Petitioner attacks the ALJ's decision on four grounds. First, Petitioner asserts that her substance abuse ended in March of 2007, that she remained disabled due to her mental impairments after the substance abuse ended, and that the ALJ therefore erred in concluding that substance abuse was a material contributing factor to Petitioner's disability.[1] Second, Petitioner argues that her sleep apnea, carpal tunnel syndrome,

---

[1] In her Reply Brief, Petitioner states that she "amends her onset date to March 30, 2007, and does not claim benefits prior to that date." (Dkt. 18 at 2.) Petitioner originally claimed an onset date of November 1, 2003. Nothing in the record indicates that Petitioner attempted to amend her onset of disability date at the administrative level. The question of whether Petitioner may amend her onset of disability date at the district court without having raised the issue at the administrative level is a separate question from whether the ALJ erred in finding her substance abuse a material contributing factor to her disability. The Court holds that Petitioner may not attempt to amend her onset of disability date at this stage of the proceedings. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (issues waived that were not presented to the ALJ);

obesity and diabetes are severe impairments and that the ALJ's failure to designate these impairments as severe constituted error at step two of the five-step analysis. Third, Petitioner argues that the ALJ erred by not taking into consideration all of her impairments in determining that Petitioner had the residual functional capacity to perform light work. Finally, Petitioner argues that the ALJ failed to set forth legitimate reasons supported by the record for finding Petitioner's testimony not credible. Each of Petitioner's assignments of error will be addressed below.

1. **Substance Abuse as a Material Contributing Factor to Petitioner's Disability**

It is well-settled that "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (quoting *Bustamante v. Massanri*, 262 F.3d 949, 954 (9th Cir. 2001)). Under 42 U.S.C. § 423(d)(2)(C), a claimant is barred from receiving disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Under the implementing regulations, the relevant inquiry is whether the Commissioner would still find the claimant disabled if she stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535 and 416.935. In making this determination, the ALJ must evaluate which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(2). If the remaining limitations still would be disabling, the

_____

*see also*, *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999) (holding that appellants must raise issues at their administrative hearings to preserve them on appeal).

claimant's drug addiction or alcoholism is not a contributing factor material to her disability. 20 C.F.R. § 404.1535(b)(2)(i) "If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Parra*, 481 F.3d at 747 (citing 20 C.F.R. § 404.1535(b)(2)(ii)).

Once evidence of substance abuse surfaces, the burden of proof rests with the claimant to establish that the substance abuse is not a material contributing factor to disability. *Parra*, 481 F.3d at 748. The United States Court of Appeals for the Ninth Circuit has held that this approach "is consistent with the general rule that at all times, the burden is on the claimant to establish [her] entitlement to disability insurance benefits." *Id*. (internal quotation marks and citation omitted). "Moreover, placing the burden on the claimant is practical because the claimant is the party best suited to demonstrate whether [she] would still be disabled in the absence of drug or alcohol addiction." *Id*. (internal quotation marks and citation omitted).

In this case, at step three of the five-step inquiry, the ALJ found Petitioner's "mental impairments, including the substance use disorders, meet listings 12.04 *Affective Disorder*, 12.06 *Anxiety-Related Disorder*, 12.08 *Personality Disorder*, and 12.09 *Substance Addiction Disorders*." (AR 15.) In making this finding, the ALJ noted Petitioner's extensive substance abuse history:

> The claimant has extensive drug and alcohol history
> stemming back to age 15. She began using marijuana at age
> 15 and cocaine at age 16, both sporadically. She started using
> methamphetamines at age 16 or 17 and by age 20 she was
> using methamphetamines 2 or 3 times per week, 4 lines per

use. She has used some form of opiate medication on a daily
basis since [age] 33. Also, when she . . . was low on
medications she stole Xanax from her mother.

(AR 15-16.)

Concerning her daily activities, the ALJ found that Petitioner had moderate

restrictions and found that, "[w]hen abusing substances, the claimant has difficulties with

grooming herself and there is reference to her being odorous." (AR 16.) Concerning

social functioning, the ALJ found that Petitioner had marked difficulties, stating that

"[w]hen abusing substances, she isolates and reports finding she has no activities she

finds pleasurable." (*Id.*) Regarding concentration, persistence or pace, the ALJ found

Petitioner had marked difficulties, acknowledging Petitioner's anxiety and severe

depression, but finding that "during this time the claimant admitted she was abusing her

prescription medication and such abuse likely resulted in significant impairment to the

claimant's ability to maintain concentration, persistence, and pace." (*Id.*)

The ALJ also found that the medical records supported at least one episode of

decompensation. (AR 16.) Specifically, the ALJ noted that Petitioner was admitted to the

Kootenai Medical Center on March 25, 2007, for an opiate and benzodiazepine-induced

psychosis. (*Id.*) The medical record generated in connection with Petitioner's

hospitalization in March of 2007 indicates that Petitioner was brought to the hospital by a

friend who expressed concern for Petitioner's well-being; Petitioner had stated "I want to

go asleep and die," experienced hallucinations, and exhibited generally bizarre behavior.

(AR 254.) Petitioner's chief complaint was "I think I took too many pills." (*Id.*) The

report also notes that Petitioner exhibited a foul order, was poorly groomed, was sweaty, and slightly tremulous. (*Id*.)  Petitioner was diagnosed with psychosis, "[m]ost likely due to chronic Dexedrine abuse," polysubstance dependence, and treated for opiate withdrawal. (AR 255.)

In a Chemical Dependency Assessment conducted during Petitioner's hospitalization, Petitioner was reported as having an extensive drug history stemming back to the age of 16. (AR 270.)  The same assessment diagnosed Petitioner with opiate and methamphetamine dependence. (AR 272.)  Petitioner also reported taking opiates "on a very heavy basis" after her father's death. On March 28, 2007, Petitioner was noted as being "quite med-seeking" and "primarily angry about not getting medications." (AR 277.) And, "[b]ecause [she was] unable to interrupt the daily cycle of her substance use, [Petitioner] require[d] placement in a level 3.5 program in order to insure her safety and to minimize her access to substances." (AR 273.)  Petitioner was discharged from the hospital on April 13, 2007.

The ALJ also placed significant weight on the Mental Residual Functional Capacity Assessment, in which a consulting doctor opined that Petitioner would have difficulty understanding and remembering detailed instructions due to chemical dependency, and that her chemical dependency would limit her ability to maintain attention for extended periods, perform activities on a schedule, sustain an ordinary routine without supervision, work in coordination with others and complete a normal workweek without psychological based interruptions. (AR 319.)  The same assessment

also found that Petitioner's chemical dependency would interfere with her ability to interact with the public, co-workers, and supervisors; ask simple questions; and, maintain socially appropriate behavior. (AR 320.)

Based upon the above evidence, the ALJ concluded that Petitioner's substance abuse was a material contributing factor to Petitioner's mental disabilities. (AR 17.) Petitioner does not take issue with the validity of this evidence. She argues, however, that "there is absolutely no evidence of substance abuse after [her hospitalization in March of 2007,]" and that "[t]he record demonstrates no substantial improvement in her impairment severity without substance abuse." (Dkt. 15 at 12-13.)

As an initial matter, Petitioner's focus on whether she discontinued the substance abuse is misplaced. There is substantial evidence in the record that Petitioner's debilitating psychosis was caused by substance abuse. The pertinent question is not whether Petitioner stopped abusing her medications, but whether Petitioner would remain disabled in the absence of substance abuse. Moreover, the burden was on the Petitioner to demonstrate that her mental impairments would remain disabling in the absence of substance abuse.

In his decision, the ALJ specifically addressed whether Petitioner's mental impairments would remain disabling if Petitioner stopped abusing her medications. (AR 17-18.) He found they would not. Concerning Petitioner's activities of daily living, the ALJ found that "the claimant would have no limitation if the substance use was stopped." (AR 17.) In making this finding, the ALJ noted that, "when the claimant is not abusing

substances she is able to groom herself without problems; whereas, prior to her hospitalization she was having some difficulty in this area." (*Id*.)  The ALJ also noted that Petitioner stated in a function report that she can care for her own personal needs, cook, clean, drive, shop, and handle money. (*Id*.)  Concerning social functioning, the ALJ found that "the claimant would have no limitation if the substance use was stopped." (*Id*.)  In reaching this conclusion, the ALJ noted that, during her substance abuse treatment, "the claimant was able to attend group sessions and a group potluck and her behavior was appropriate." (*Id*.)

Concerning the area of concentration, persistence or pace, the ALJ found that "the claimant would have no limitation if the substance use was stopped." (AR 18.)  The ALJ noted that, during her substance abuse treatment, Petitioner "was attentive during group sessions," "[was] able to follow conversation," and it was noted that her thought process was organized and that she was able to think in abstract terms. (*Id*.)  Finally, the ALJ found "no evidence of episodes of decompensation in the absence of substance abuse." (*Id*.)

The Court finds the ALJ's conclusion that Petitioner's mental impairments would not be disabling in the absence of substance abuse supported by substantial evidence.  As the ALJ notes in his decision, the medical records indicate that Petitioner's symptoms quickly improved while she was in the in-patient substance abuse treatment program.  Moreover, a mental status observation dated May 5, 2007 – approximately one month after Petitioner was discharged from the hospital – indicates that Petitioner was "clean,

groomed and dressed appropriately," "display[ed] no abnormal mannerisms," "[t]hough

process was organized and linear," "[n]o hallucinations," and that Petitioner "was able to

follow conversation, and her memory was fair." (AR 374-75.) Similarly, progress notes

from treating physician Tim Stoddard dated September through December of 2008 state

that Petitioner "tends to be more capable than she gives her[self] credit for," "[h]er

frequent napping is not likely a sign of overwhelming anxiety," she would benefit from

attending Women's Group and "increased general level of activity," and that increased

exercise was recommended. (AR 524, 525.)

Petitioner directs the Court to medical records dated after her drug-induced

psychosis in March of 2007, which indicate that she remained depressed. Petitioner,

however, does not point the Court to any evidence suggesting that her depression would

remain severe enough to render her disabled in the absence of substance abuse. The ALJ

found Petitioner's mental impairments, including depression, would not meet a listing in

the absence of substance abuse. Because the ALJ's conclusion is based on substantial

evidence, the Court may not substitute its own judgment for that of the Commissioner.

*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

**2.     Impairments not Related to Substance Abuse**

After making the determination that substance abuse was a material contributing

factor to Petitioner's mental impairments, the ALJ evaluated Petitioner's other

impairments that would exist in the absence of substance abuse. The ALJ found at step

two of the five-step inquiry that Petitioner's fibromyalgia was a severe impairment. The

ALJ concluded at step three, however, that Petitioner's fibromyalgia – and the symptoms related to that impairment – did not meet or equal a listing under the implementing regulations. He further found that Petitioner's symptoms related to fibromyalgia did not prevent her from performing past relevant work.  Petitioner argues that the ALJ erred at step two by failing to designate Petitioner's sleep apnea, carpal tunnel syndrome, obesity and diabetes as severe impairments.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(d) and 416.920(c).  The Ninth Circuit has described the step two inquiry as "a de minimis screening device to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001).  Step two is a threshold inquiry; once it is determined that a claimant has at least one severe impairment, the ALJ moves on to the next step of the sequential evaluation process. See 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Given the gate keeping function of the step two inquiry, the Ninth Circuit has held that an ALJ's failure to properly designate all of a claimant's impairments as severe will be deemed harmless error if at least one impairment was designated severe and the ALJ moved on to the next step in the sequential inquiry. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (holding that ALJ's failure to designate one fo claimant's impairments as severe at step two of the five step inquiry was harmless where the ALJ found other severe impairments and proceeded to step three).

Thus, assuming for the purposes of this review that the ALJ failed to properly designate all of Petitioner's severe impairments as severe, such error would be harmless because the ALJ found at least one of Petitioner's impairments severe and moved on to step three of the sequential evaluation process.

**3.      Residual Functional Capacity**

The ALJ found, "[i]f the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work." (AR 19.)  Specifically, the ALJ found that Petitioner could lift or carry 20 pounds occasionally and frequently lift or carry 10 pounds; Petitioner could sit for six hours and stand or walk for six hours in an eight-hour workday; and Petitioner could frequently finger items, but she should not climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to hazards such as unprotected heights and moving machinery. (*Id.*)  Petitioner argues that, in making the above RFC determination, the ALJ failed to take into consideration all of Petitioner's impairments, including sleep apnea, carpal tunnel syndrome, obesity, diabetes, fatigue, and symptoms related to Petitioner's fibromyalgia.  Petitioner further argues that the ALJ's failure to consider all of Petitioner's impairments resulted in a higher RFC than supported by the record and constitutes reversible error.  For the reasons that follow, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

A claimant's residual functional capacity "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any

related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling ("SSR") 96-8p. The assessment represents an individual's maximum ability to do sustained work activities in an ordinary work setting on a regular basis. *Id*. "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id*. Moreover, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*.

Here, the ALJ considered all of Petitioner's impairments in making his RFC determination. For instance, concerning Petitioner's sleep apnea, the ALJ noted that Petitioner's sleep problems were exasperated by Petitioner's failure to establish a regular bed time, and cited a medical report indicating that Petitioner "typically goes to bed anytime between midnight and 4:00 in the morning and gets up anytime between 9:00 in the morning and 2:00 in the afternoon," and that she sleeps several times during the day. (AR 199-202.) The ALJ also noted that Petitioner is able to sleep with a sleep aid, and the record indicates that Petitioner's sleep was improved through the use of a CPAP (continuous positive airway pressure) device, (AR 200), and Petitioner testified that she was taking prescription medication to help with her sleep. (AR 41.)

Concerning Petitioner's limitations related to carpal tunnel syndrome, the ALJ noted that Petitioner underwent bilateral carpal tunnel release in January and February of

2007. (AR 15, citing AR 246-251.) However, in May of 2007, Petitioner reported that, during her free time, she did beading or made jewelry, (AR 378-79), and the record indicates Petitioner enjoyed cooking a variety of meals and could perform housework, including cleaning, laundry, and some yard work. (AR 144.) The ALJ found that, following her surgery, nothing in the record indicated limitations related to carpal tunnel syndrome.

Concerning diabetes mellitus, the ALJ noted that Petitioner was diagnosed with the disease near the time of the hearing, but further noted that nothing in the record supported any limitations based on this diagnosis. Petitioner does not direct the Court to anything in the record supporting physical limitations due to diabetes or that Petitioner could not perform light work due to her diabetes. The same holds true for Petitioner's obesity, fatigue,[2] neck problems,[3] and migraines.[4] As the Commissioner points out, Petitioner does not explain how the ALJ's RFC finding, which limited her to light work, would not sufficiently accommodate her limitations based on the above impairments; Petitioner simply states in conclusory fashion that these limitations should reduce her RFC. *See*

---

[2] The ALJ noted that the record supported the conclusion that Petitioner's drowsiness was caused, at least in part, by her poor sleep habits. (AR 21.)

[3] Concerning Petitioner's neck, the ALJ noted that in September of 2004, it was reported that Petitioner had decreased range of motion, but later records indicated Petitioner had retained full range of motion in her neck. (AR 21.)

[4] In his decision, the ALJ stated that "it appears [Petitioner's] migraines are controlled with medication." (AR 21.) Impairments that can be effectively controlled through medication are not considered disabling. *Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

*Shinseki v. Sanders*, 129 S.Ct. 1696, 1706 (2009) (holding that the burden of showing an error is harmful falls on the party attacking an administrative agency's determination) (citing, *Nelson v. Apfel*, 131 F.3d 1228, 1236 (7th Cir. 1997) (applying rule in social security case)).

The ALJ properly considered all of Petitioner's impairments and his findings relating to these impairments are supported by substantial evidence in the record. The Court concludes that the ALJ did not commit error in assessing Petitioner's RFC.

## 4.   Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* SSR 96-7p.

Errors in an ALJ's credibility analysis do not necessarily invalidate the entire analysis. "So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' [the error] is deemed harmless and does not warrant reversal. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)

(quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

Here, Petitioner acknowledges that "[t]he ALJ set forth a number of reasons why he felt the Petitioner's testimony was not credible," but she contends that the reasons given by the ALJ are not legitimate. (Dkt. 15 at 14.)  The Court disagrees, finding that the ALJ provided clear and convincing reasons for rejecting Petitioner's testimony as to the severity of her symptoms.

The ALJ noted that Petitioner took care of her father after he had kidney failure, including driving him to his dialysis appointments three times per week, and that Petitioner also took care of her grandmother after her grandmother was diagnosed with dementia. (AR 22.)  Petitioner argues that taking care of her father and grandmother did not require a lot of physical work and does not support an adverse credibility finding. These activities, however, are consistent with the ALJ's conclusion that Petitioner could perform light work, including work as a companion, and contradict Petitioner's assertion that she is unable to engage in even sedentary work. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."). The fact that Petitioner was able to assist her father and grandmother from 2004 to 2008 is a valid reason for the ALJ to infer that Petitioner had more ability to engage in physical activities than she alleged.

**MEMORANDUM DECISION AND ORDER - 20**

In addition, the ALJ noted that Petitioner reported that she enjoys cooking a variety of meals, is able to do various household chores, goes grocery shopping three days per week, and does some yard work. (AR 22.)  These findings, supported by the record, (*see* AR 144, 145), are inconsistent with Petitioner's assertion that she is unable to perform light work and support the ALJ's adverse credibility determination. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (upholding ALJ's adverse credibility finding based on the claimant's testimony concerning daily activities, including taking care of children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week).

The ALJ also found Petitioner's active travel itinerary, including week long trips, cruises, and trips to Seattle and Montana, inconsistent with Petitioner's alleged limitations.  The Ninth Circuit has held that a claimant's ability to travel is a permissible reason to reject a claimant's testimony as to the severity of his or her impairments. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ could properly infer from claimant's travel to Venezuela that the claimant was not as physically limited as he purported).

The ALJ noted that "claimant stopped working for reasons not related to the allegedly disabling impairments," and that a "reasonable inference, therefore, is that the claimant's impairments would not prevent the performance of that job, since it was being performed adequately at the time she left the job despite a similar medical condition." (AR 22.)  This finding is supported by the record.  Petitioner testified at the hearing that

she left her job as a waitress due to problems with co-workers, not because of her impairments.[5] (AR 36-37.)

The ALJ also questioned Petitioner's motivation to work, noting that her grandfather had left the family money when he died, and that Petitioner has never had to worry about finances. (AR 22.) Petitioner takes issue with this finding, stating that "[t]here is absolutely no evidence in the file demonstrating . . . [Petitioner's] family's 'net worth,' . . . which is certainly not compatible with the ALJ's assertion that she is independently wealthy and therefore has no motivation to work." (Dkt. 15 at 15-16.) The Court notes that an ALJ may properly question a claimant's motivation to work due to his or her settled financial situation. *Tommasetti*, 533 F.3d at 1040. Furthermore, the ALJ's findings are supported by the record; Petitioner reported that "[s]he lives off of her grandmother's and mother's income," "states she never has to worry about money," reported that "[t]he house she resides in is paid off and will someday be hers," and that "[h]er car is paid off as well." (AR 378.) It is also worth noting that medical records from 2008 indicate that Petitioner herself expressed no motivation to go back to work or school. (AR 497.)

Finally, the ALJ found that the medical evidence did not support Petitioner's testimony concerning the severity of physical limitations. While testimony concerning

---

[5] When Petitioner was asked what happened in her last job she testified that she "walked out" because "[t]here were a lot of things going on that made me feel uncomfortable," including "[b]artenders drinking on the job" and "[g]reed[] [among the] waitresses." (AR 36-37.)

the severity of a claimant's impairments may not be rejected solely on the ground that it is not fully corroborated by the objective medical evidence, the Ninth Circuit has made clear that medical records remain a relevant factor in evaluating the severity of a claimant's limitations. *Rollins*, 261 F.3d at 857. The ALJ noted that MRI images taken of Petitioner's spine in 2003 revealed very little degeneration, and that, although there were several references to flares of sciatic pain, "there is no evidence of limitations of motion or limitations in strength." (AR 20.) The ALJ also noted that Petitioner's fibromyalgia and migraines were controlled with medication. (AR 20, 21.) These findings are supported by the medical records.

Based on the above, the Court finds that the ALJ provided clear and convincing reasons for rejecting Petitioner's testimony concerning the severity of her physical limitations. The fact that the evidence may be susceptible to more than one reasonable interpretation is of no consequence; "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, [the Court's] role is not to second-guess that decision." *Fair*, 885 F.2d at 604.

## CONCLUSION

Based on the foregoing, the Court finds that substantial evidence supports the Decision of the ALJ finding Petitioner not disabled. The decision of the Commissioner will be affirmed.

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Petitioner's Petition for Review (Dkt. 1) is **DISMISSED;**

2)      The Commissioner's decision finding that the Petitioner is not disabled

within the meaning of the Social Security Act is **AFFIRMED.**



DATED: September 12, 2011

_____

Honorable Candy W. Dale
Chief United States Magistrate Judge